| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |

National Liability & Fire Ins. Co., §
§
    Plaintiff, §
§
versus §   Civil Action H-07-3169
§
R & R Marine, Inc., et al., §
§
    Defendants. §

# Findings and Conclusions

1. *Background.*

    Hornbeck Offshore Services, LLC, owns the sea-going tug, the *Erie Service*. The *Erie Service* sunk during a storm on September 13, 2007. This loss is covered by the general liability policy issued by National Liability & Fire Insurance Company to R&R Marine Maintenance, Inc. R&R had custody of the vessel when it sunk. R&R failed its duty to the vessel because it did absolutely nothing to protect it from the approaching storm. R&R's negligence caused the vessel to sink while it was in R&R's care. It is liable for the resulting damage.

2. *Salvage.*

    Hornbeck paid T&T Marine Salvage, Inc., $627,324.64 to salvage the *Erie Service*. Hornbeck received two quotes from T & T: a "no cure, no pay" bid for $298,500, and a "time and materials" estimate for $245,000.

    T&T sent a crane barge and two derrick barges to lift the *Erie Service*. On the first try, the stern sling cut into the vessel, and it had to be lowered. In order to move the sling to an area of the vessel where there was more deck plating, T&T had to bring a larger derrick barge to the site. This prolonged the job for a few days and increased costs. The second lift was successful.

    R&R says that Hornbeck was unreasonable to have chosen the "time and materials" bid. Hornbeck bore the responsibility for the salvage – choosing the company, selecting the type of bid, and paying the bill. It chose the "time and materials" option. R&R did not object

to Hornbeck's operating decision until the trial. It did not object to the barges that T&T chose until the trial. It did not object to Hornbeck's negotiations with T&T until trial. The cost of the salvage and damages caused by the first lift are reasonable given the condition of the *Erie Service*. The reasonable cost of salvage is $627,324.64.

3. *Steel.*

R&R repaired the steel on the vessel after the salvage for $238,967. It wants to deduct $26,975.00 that was caused by the improper salvage, not the sinking. The damage from the first lift was an ordinary consequence of salvage – salvage required by R&R's negligence. The reasonable cost of steel repairs is $238,967.

4. *Wiring.*

Hornbeck paid Rio Marine, Inc., $200,000 to rewire the vessel. Some of this work had needed to be done before the sinking. Rio had bid $315,000 for the electric work before the sinking, including refurbishing the switchboard. At trial, Rio's man testified that a complete rewiring, excluding the switchboard, would cost $450,000. The difference – $135,000 – for the wiring is a reasonable cost for the water damage to the wiring.

5. *Repair Supervision.*

George Petrellis was the project manager for the *Erie Service*. He worked for Dufour, Laskay, & Strouse, Inc., not for Hornbeck. His invoices represent his management of the repairs to several other vessels, as well as the *Erie Service*. At trial, he allocated the proportion of time that he believed he spent overseeing the repairs caused by the sinking of the *Erie Service*. A reasonable approximation of the cost of supervision is $6,700.

6. *Adjustment.*

The invoice for the adjustment of the value of the *Erie Service* is an exhibit. The charge for $16,275 was reasonable.

7. *Uncontested Items.*

R&R does not contest:

    A. Rio's invoice for $18,555 to refurbish the switchboard;

    B. The survey of 3-D Marine USA, Inc., for $16,836.45; or

    C. Coral Marine Services' invoice for $17,185.

8. *Conclusion.*

The amount of damage caused by R&R's negligence resulting in the sinking of the *Erie Service* totals $1,076,843.09. Pre-judgment interest is awarded from September 13, 2007.

Signed on February 12, 2010, at Houston, Texas.

_____

Lynn N. Hughes
United States District Judge